Good morning, your honors. Michael Crowley and Emily Crowley, on behalf of Mr. Chandler, who's obviously not present. May it please the court, I would like to try to reserve about two minutes for rebuttal. The essence of the government's argument in this case was, of course, that there was an agreement between Mr. Chandler and essentially Mr. Bobel, the mastermind of this scheme, which we don't dispute at all, that there was a scheme. And so what was critical, of course, in any scheme is people getting money illegally. And that was the essence of the defense, was that Mr. Chandler did not get anywhere near the bulk of the money. Why does it matter what he got? We're talking about loss, not gain. Correct. But it goes to the factual issue of whether he knew what was going on. And there was a plethora of evidence all the way through the defense about everything that Mr. Bobel prevented Mr. Chandler from finding out about the misuse of scripts, about the issues of refunds not going out. All of those things were building in the defense, and so that's why it was critical that he was basically getting paid what a lawyer of his experience would get ordinarily. So why would anybody enter into a fraudulent operation just to make what you would ordinarily get in a salary? And that's why it was such a surprise to myself to have this person come in when I'm expecting an expert and expecting to be able to refute the expert on actual forensic grounds, the numbers actually being crunched, and then to have somebody to come up that just says a bookkeeper and gives this wildly inflated number. A wildly inflated number based on books that she was responsible for for the company. Which... I mean, she can testify as a lay witness. That's right. And that's what the court allowed it in and then struck it, because saying that there was absolutely no foundation... So then what's the harm? Because the court struck it. And that is the rub, isn't it? Because can they really take that out of their scenario about Mr. Chandler? But for the... I mean, if you're talking about... So we have two issues in this case that touch on these issues. One is whether his conviction is valid, and the other is the sentencing issue. It sounds like you're trying to talk about the conviction right now, and in that regard, the jury didn't have to find any particular amount of money, did it? They did not. That's true. I mean, he made some amount of money from this. Right. Only that it was critical to the defense to be able to say that, just like I... I don't want to repeat myself, but all the things, the impediments that were put in place to prevent him from knowing the extent of the fraud, knowing the fraud, including the payment. So it was a critical part of the defense that we were deprived of. You argued those things to the jury, and they didn't believe you, or whoever was his counsel, right? I disagree with that. That's what happened. That's true. But it does... But the sequence of events that caused that just blew a hole, basically, through the defense, to be able to have the credibility in front of the jury about what happened to him in that situation. And that was through that evidence, and it didn't have to happen. If we had... Really, if we had been able to have a sidebar and explained, that would have been part of it. But most importantly, we didn't get it in discovery. It was a complete surprise. She admittedly met for two weeks with the FBI prior to the trial, and we don't get one report. That was... Totally violated our ability to have a fair trial in that regard, because it was a complete surprise, which, as we know... But then the judge struck it and told the jury not to consider that amount. So I don't see how in the end, when the jury doesn't need to find the amount of money anyway, and now the higher number has been struck, what the harm is. Well, the harm was... And, of course, this is the reoccurring issue, and that's why we have Supreme Court justices saying, if we believe that they can really just accept that and not take it into account in any way... And most of the cases that have to do with the judge struck it so it's okay have to do with the legal issues. Here you had a factual issue that went to the heart of the defense. And by the judge just saying that... And, in fact, the judge failed to strike the other portions of her testimony about the wildly inflated numbers of how much totally was taken in, which no one could really completely quantify, but allowed it to come in wholesale over my continued objection about her ability to be able to do that. But most importantly was the surprise. I could have prepared for her if I had the reports that said she sat down with the financial analyst and basically, I don't think the reports would have said this, but it's what happened. She just parroted what the expert reported. But your argument is that she didn't parrot it. You had the expert report. So if she had parroted it, then you wouldn't have this argument because she would have had... So I don't understand how you could argue about that. Isn't that interesting that what happened during those two weeks? And so if I had reports about that, oh, I sat down with the FBI and I said certain things, and we had a report that said that, then I would have been prepared to be able to take on that issue. Well, so you can't say she parroted it because if she had parroted it, you would have been prepared. You were prepared to examine the expert. She did. She made it a lot worse. She parroted it. Pardon? She made it a lot worse. She did lots of things the expert couldn't and didn't. And so you faced not just what the expert report said. You faced something more. Exactly. And something that I didn't know about. And that's what created the lack of fair trial here. Moving on to, unless there's other questions in that area, we had the juror situation where there was no attorney conducted, so there was no chance to follow up in any way, and then we only found out later, even though we had lack of investigation to be able to, lack of funds to be able to investigate on it, that this person had been involved in mortgage defaults. She did. She came in and testified. Once again, it was over my objection that I didn't have time to properly prepare because it was the FBI that went and fetched her and brought her there. But there was no question about it that she was involved in mortgage defaults. That would have been a basis for cause right there. In fact, the judge was surprised that nobody on the panel had that situation, and it was unusual in this time period. Why do you say it would have been a basis for cause? I mean, maybe it would have been explored further, and then we would have found out did you really lose the home and was it because of some kind of fraud or not. It doesn't sound like her situation was anything like this case. Right. Only in the sense that I think that there would have been a good argument that she had been part of what was going on in the overall mortgage fraudulent business. But she wasn't, actually. She just had a family emergency and missed a couple payments and then made the payments and didn't lose the house, right? Well, the record on that is very convoluted. She actually defaulted twice. She received notices from the bank. She didn't get all the way to the actual dates of foreclosure, but she did have that situation where she was involved in it. I think I would have, whether it would have been granted or not, it would be speculative. But I think that there would have been a basis for her having been involved in the system that that would have been an issue that would have been an argument for cause to strike her. I see my time is up, so. And we'll hear from the government. May it please the Court, Daniel Zip on behalf of the United States. Your Honors, more than a year before trial in this case, the United States notified defense that it intended to call Patricia Bryant to testify in its case in chief. She was a bookkeeper at the company. She was personally responsible for keeping track of the funds that came in and out of the various accounts. She was personally responsible for calculating the commissions paid to Mr. Chandler, and she even cut his paychecks for him. The United States also provided in discovery all of the bank records that form the basis of her opinion, and she took the stand and testified that based on her first-person experience as a bookkeeper at the company, she calculated a total of $836,000 had gone to Mr. Chandler. This was not a Rule 16 violation, and it was not prosecutorial misconduct. As to the Rule 16 argument, the United States also independently provided adequate Rule 16 notice for its expert witness, Carol Simmons, that included her qualifications and the basis for her testimony. And there's nothing in the record that suggests that this was somehow concocted testimony or that the United States knowingly presented false testimony from this witness. She had firsthand experience, and she testified as to what she knew from the bank records. Let's work backwards for a second. Does your office have an open file policy with regard to disclosure? I don't know if I would call it an open file policy. Okay. Then what is it that defense counsel could fairly be expected to know or anticipate at the time when he's preparing for trial? I mean, he knows this woman is on the witness list. Does he know anything else about what she might say? He wouldn't. I mean, what he had in this case was all the bank records that form the basis for her testimony, any reports that she had that the FBI had generated from past meetings with her. Do you know whether he made any effort to contact her or try to interview her? I don't, Your Honor. Could he have? Could he have? Is there any reason he couldn't have interviewed her? No. She was a former employee at his company. And, again, this was not some sort of ballistics expert or something that was testifying about an expert area that he wouldn't be able to have any knowledge or would be surprised by. I mean, this was his own bookkeeper talking about his own income. So the idea that he was somehow surprised by how much money he made when his own bookkeeper testified to that and he had all the bank records, the fact that we provided a different expert doesn't make this a Rule 16 violation. Could you address the sentencing issue and the loss amount? I'm struggling with where the district court made a finding that matches the loss range that was the basis of the sentence. Yes, Your Honor. Obviously, the court did not give a specific dollar amount in this case. The United States presented several different bases for the loss amount of more than $7.5 million. Was there ever an amount that the government proposed that was between $1 million and $2.5 million, which would be the range that gets you to this sentence? No. We always recommended higher, and the court specifically addressed our recommendation and said, I don't think that you've met that higher amount. And I think the issue here is, you know, our argument was $10 million, $13 million were both testimonies as to the total amount of money that came in from consumers. The issue is some of those consumers did receive loan modifications. Some of those consumers did receive refunds. So there is sort of a gray area. We argue that the full $10 million, $13 million was payments for something that was falsely advertised and that they didn't receive the services that they provided. But there is an argument on the other side that it should be lower than that. And I think the law is clear that on a fraud case like this, the court doesn't have to get an exact number. It has to make a reasonable estimate of the loss amount. But does it have to make some estimate? I mean, what I'm struggling with here is whether the court actually made an estimate at all that matches what the sentence was. All the court said was the court listened to both sides, specifically addressed our last calculation and said, I don't think that you've made enough. I don't believe that the law requires the court to have a specific loss amount. And there are bases for that finding in the record beyond what he said. I mean, for instance, there was a lot of testimony about Mark Spencer, one of the salesmen. And when he took the stand, he said that he has already paid, I believe, $1.3 million to the victims. There was also the United States had a lower restitution amount. So there were a lot of different numbers out there as to what the proper amount of loss was. The fact that the court didn't specifically say the number, I don't believe warrants a reversal in this case. In any event, the defense never objected procedurally to the court's lack of explanation, and presumably he would have provided more of an explanation for how it got that number. And because of that lack of objection and because ultimately it's a plain error standard, then he would still have to show a reasonable probability that the sentence would be different. And I think in this case, all the evidence would suggest that it might be different, but it would be a higher calculation and that all the numbers provided seem to suggest a loss significantly greater than $1.5 million. So are you essentially arguing that if the court had given anything lower that you would have appealed and we would have had a ground to reverse? Is that really what you're arguing and said, therefore, it's not plain error? No. Because, I mean, you could have appealed this sentence. You didn't, though. I mean, you could have said this is too low, right? He should have had a loss amount of $13 million. We could have, and we didn't cross-appeal that. And I think there is probably good reason for the defense not to object and say, Your Honor, can you explain yourself more why you only gave him a $1.5 million loss amount when it seems to be that the proper amount would be significantly higher. So ultimately, even if the court didn't explain itself sufficiently, there's not any to remand for resentencing. The defense has not shown a reasonable probability that the sentence would ultimately be lower if the court gave a more thorough explanation. Under Armstead, do you think it is an error and you're just arguing that it's a harmless error and it doesn't meet the plain error standard? I mean, it does seem that we have law that says the district court does need to calculate the loss amount, and it doesn't seem like we have that, but it sounds like what you're arguing is, okay, but under the plain error standard, he doesn't meet the rest of the plain error standard. That would be our secondary argument. I don't believe that on the facts of this case when you have both sides arguing the issue and the court specifically addresses it, that there is a requirement that the court have a specific loss amount. You took his pronouncement of, was it 16 levels? Yes. That you infer backwards from 16 levels he must go back to the range that supports 16 levels, even though he didn't say the number of dollars. Well, he announced that after specifically addressing the government's argument as to what the loss amount was that equaled the 20 levels. I'm not trying to be at cross-purposes here. I'm going to be sure I understand your argument. I take it to say you acknowledge he didn't announce a dollar amount. He announced the number of levels. Your argument, as I understand it, is that the number of levels equates to a dollar range, so that must have been the range he found. Yes, that's correct. As far as the juror bias issue, there was extensive testimony from the court and from cross-examination that juror testified repeatedly that she, one, didn't remember receiving the defaults, and two, that she didn't understand the request to mean that she thought that default meant losing her home and she had actually earned a profit on her home. So at the very outset, the fact that she had an honest but mistaken belief in the judge's question essentially ends the analysis on that point. There's a number of other issues raised. I'm happy to answer any additional questions the court might have. Thank you. Thank you. I think my friend from the Southern District, when he said they substituted another expert for the one that they had originally designated, was really brings home the point. Because if I had a report with numbers in it, if I had any inkling that this person was going to take documents that were subpoenaed by the grand jury and, yes, we had those back documents. That's what my expert said. It was nominally, at least, your client's company. So he presumably knows what's going on or is in position to find out. Well, there was a great deal of testimony that is in the record about him lacking that, that ability to do that and the ability to even order refunds that he felt were appropriate because the mastermind of the operation was controlling the books and he was the one that was stopping the refunds when they should have been made, even though many refunds did go through. Well, you know, if you agree to be the front man, sometimes you're held accountable for what goes on behind your back. And that is exactly what that is. That's his problem. There's no doubt about that. But that doesn't mean that and absolutely civilly liable for it. But does he have the intent to be criminally liable to the tune of the highest sentence of all the people involved Well, there's intent required for that. I mean, suppose you're representing a bank robber who's working with a bunch of other people and they go in and grab lots of cash and then they go out and get separated. He never really knows what's in the bag, but I think it would be expected he's going to be held accountable for whatever is in the bag. I understand that if there's an initial agreement that he's going to go in and rob the bank. Well, they're using his signature to send the letters that they're sending to these clients. I mean, he is he is a key part of this endeavor. He was a key part of the endeavor that he considered a an operation that was truly trying to to work to get these people relief. You know, we tried to make the argument. I know that is just last week was foreclosed by this court about the bank's refusals to follow the federal law. But that's what he was working on in that in setting up the operation. And there was a physical difference there. So the fact of him getting paid like a lawyer would normally get paid for that was critical to our notion that he was not did not enter an agreement for a criminal enterprise. He might have argued he got paid in an amount similar to what a lawyer might have got. But I don't know of any lawyer. And I was a lawyer for a long time who got paid like he got paid. It was when he was all set. And the company was put in his name and he was given a piece of it. And he might not know how big a piece it was or or how big the pie was. But I never practiced when I was made the president of the company and told to be nominally the front man. That's that's not real typical. The other part. Well, even more than he should have gotten a lot more. He didn't he didn't have a boat. He didn't have an eight thousand dollar watch. He didn't have offshore accounts that the mastermind mastermind did. Thank you. Thank you. Thank both counsel for your helpful arguments. Case just argued is submitted. That concludes our calendar for this morning. We're adjourned.
judges: Fernandez, Clifton, Friedland